IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION AT JACKSON

| | |
|---|---|
| CLIFFORD ROBERT WHITE, individually, and as Administrator and heir at law of the Estate of Gina Lenora White, deceased,<br><br>       Plaintiffs,<br><br>vs.<br><br>HENDERSON COUNTY, TENNESSEE, HENDERSON COUNTY SHERIFF'S DEPARTMENT; SHERIFF BRIAN DUKE, Individually and in his Official Capacity as Sheriff of Henderson County, Tennessee; ANTHONY WOODFIN, Individually and in his Official Capacity as Captain/Jail Administrator, JACKIE BAUSMAN, Individually and in his Official Capacity as Lieutenant at the Henderson County Jail; ERIC HATCHETT, Individually and in his Official Capacity as Sergeant at the Henderson County Jail,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. _____<br>)<br>)  JURY DEMANDED<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Come now Plaintiffs, Clifford Robert White, individually, and as Administrator and heir at law of the Estate of Gina Lenora White (deceased), by and through counsel, and file this Complaint individually and on behalf of the Estate of Gina White against Defendants, Henderson County, Tennessee; Henderson County Sheriff's Department; Sheriff Brian Duke; Anthony Woodfin; Jackie Bausman, and Eric Hatchett, for money damages to be determined by the trier of fact in this cause and for costs of this litigation, and interest, attorney fees, and any other relief due pursuant to 42 U.S.C.§1983 and §1988; the Eighth and Fourteenth Amendments to the United States Constitution; Tennessee Code Annotated, §20-5-113 for Wrongful Death damages; and under the common law of the State of Tennessee.

## JURISDICTION AND VENUE

1.      On February 7, 2015, Gina Lenora White tragically died while detained at the

1

Henderson County Criminal Justice Complex, located in Lexington, Henderson County, Tennessee. During all times relevant, the deceased, Gina White, was an inmate/detainee at the Henderson County Criminal Justice Complex which is owned and operated by Henderson County, Tennessee.

2.    Plaintiff, Clifford Robert White, is the father of Gina White, and he is a citizen of Robertson County, Tennessee. Clifford Robert White has been judicially appointed by the Chancery Court for Henderson County, Tennessee to serve as the Administrator for the Estate of Gina White, and by operation of law, Clifford Robert White is the sole beneficiary of the Estate of Gina White.

3.    Defendant, Henderson County, Tennessee is a municipality charted by the State of Tennessee and as such is a political subdivision of the State of Tennessee, and among its other functions, operates and maintains a law enforcement agency known as the Henderson County Sheriff's Department and operates and maintains a jail generally known as the Henderson County Criminal Justice Complex.   The registered agent for service of process is Dan Hughes, the duly elected mayor of Henderson County, Tennessee.

4.    Defendant, Brian Duke, is the duly elected sheriff of Henderson County, Tennessee. As sheriff, Defendant Duke is responsible for establishing and implementing policies for the Henderson County Sheriff's Department and the correctional officers who staff the Henderson County Criminal Justice Complex.   As sheriff, Defendant Duke is also responsible for establishing and implementing training for the Henderson County Sheriff's Department and the correctional officers who staff the Henderson County Criminal Justice Complex.   For purposes of Plaintiffs' claims for damages, a suit against the Henderson County Sheriff in his official capacity is tantamount to a suit against Henderson County, Tennessee, and therefore service upon Sheriff Duke may be effectuated by service upon Dan Hughes, the duly elected mayor of Henderson County, Tennessee.   Service upon Brian Duke, in his individual capacity, may be issued and

2

served upon Sheriff Duke at 170C Justice Center Drive, Lexington, Tennessee 38351.

5.      Defendant, Anthony Woodfin is the Captain/Jail Administrator with the Henderson County Sheriff's Department and/or Henderson County, Tennessee, and he is believed to be an adult resident and citizen of Henderson County, Tennessee.   For purposes of Plaintiffs' claims for damages, a suit against Capt. Anthony Woodfin in his official capacity is tantamount to a suit against Henderson County, Tennessee, and therefore service upon Capt. Anthony Woodfin may be effectuated by service upon Dan Hughes, the duly elected mayor of Henderson County, Tennessee.   Service upon Anthony Woodfin, in his individual capacity may be issued and served at 170C Justice Center Drive, Lexington, Tennessee 38351.

6.      Defendant, Jackie Bausman is believed to be a Lieutenant with the Henderson County Sheriff's Department and/or Henderson County, Tennessee, and she is believed to be an adult resident and citizen of Henderson County, Tennessee.   For purposes of Plaintiffs' claims for damages, a suit against Lt. Jackie Bausman in her official capacity is tantamount to a suit against Henderson County, Tennessee, and therefore service upon Lt. Jackie Bausman may be effectuated by service upon Dan Hughes, the duly elected mayor of Henderson County, Tennessee.   Service upon Lt. Jackie Bausman in her individual capacity may be issued and served at 170C Justice Center Drive, Lexington, Tennessee 38351.

7.      Defendant, Eric Hatchett is believed to be a Sargent with the Henderson County Sheriff's Department and/or Henderson County, Tennessee, and he is believed to be an adult resident and citizen of Henderson County, Tennessee.   For purposes of Plaintiffs' claims for damages, a suit against Sgt. Eric Hatchett in his official capacity is tantamount to a suit against Henderson County, Tennessee, and therefore service upon Sgt. Eric Hatchett may be effectuated by service upon Dan Hughes, the duly elected mayor of Henderson County, Tennessee.   Service upon Sgt. Eric Hatchett in his individual capacity may be issued and served at 170C Justice Center Drive, Lexington, Tennessee 38351.

3

8.      During all times material, the foregoing Defendant Deputies were servants, agents and employees of Defendant, Henderson County, Tennessee. Each every act of all Defendant Deputies involved in this incident were performed under the color and pretense of the Constitutions, statutes, ordinances, regulations, customs and usages of the United States of America; the State of Tennessee; the County of Henderson, under the color of law and by virtue of their authority as employees of Henderson County and in the course and scope of their employment with Henderson County. They separately and in concert, engaged in the illegal conduct mention herein, recklessly and with callous disregard for the Constitutional rights of Gina White, deceased, causing injury, and ultimately causing the death of Gina White as a result of such acts and omissions.

9.      The incidents which give rise to this cause of action occurred within this jurisdiction and within one (1) year of the filing of this Complaint, and this Court has jurisdiction.

10.      Venue is proper in this venue pursuant to 28 U.S.C. §1391, as all of the Defendants are residents of this district and all the acts or omissions which give rise to this cause of action occurred within this district.

11.      Jurisdiction is proper in this Honorable Court pursuant to federal question jurisdiction, 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3)(4) and 42 U.S.C. §1983.  The Plaintiffs further invoke the pendent and supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. §1367, particularly Plaintiffs' action for Wrong Death which is afforded by operation of Tennessee Code, §20-5-113.   Plaintiffs aver that the Defendants do not have immunity for the acts and/or omissions set forth herein pursuant to the Tennessee Governmental Tort Liability Act, T.C.A. §29-20-101 *et. seq.*, particularly T.C.A. §29-20-205 and T.C.A. §29-20-310(c). Accordingly, this Honorable Court has jurisdiction over all of the claims asserted herein.

12.      During all times material, the Defendant Deputies were servants, agents and

4

employees of Defendant, Henderson County, Tennessee, and they separately and in-concert, acted under color of law.

## **FACTS**:

13.    On or about January 1, 2015, Gina White (now deceased)(hereinafter "Ms. White") was arrested and taken into custody by the Defendant, Henderson County, Tennessee. Ms. White was then transported to the County's jail generally known as the Henderson County Criminal Justice Center (hereinafter "HCCJC"), which is located in Lexington, Henderson County, Tennessee. At the time of her arrest, Ms. White was 37 years old and of generally good health.

14.    On or about January 1, 2015, Defendants obtained information about Ms. White's medical history and learned that she had pre-arrest medical and mental health diagnoses of: psychosis; bipolar disorder; anxiety; and high blood pressure/hypertension.

15.    During such time, Defendants were also informed of Ms. White's medical need to receive daily doses of Hydrochlorothiazide (HCTZ 25mg) for treatment of her high blood pressure and/or hypertension.

16.    On or about January 10, 2015, Henderson County transported Ms. White from the HCCJC to Western Mental Health Institute (hereinafter "WMHI"), located in Bolivar, Tennessee, to undergo mental health evaluation and mental health treatment. Ms. White remained at WMHI until January 29, 2015, during which she underwent a course of mental treatment which included the administration of multiple prescription medications, including: Lithium, Amitripthline, Cognetin Clonidine and Prolixim. On or about January 27, 2015, Ms. White underwent a blood test at WMHI which revealed the presence of 0.70 millimoles per liter of Lithium medication within her blood system.

17.    On January 29, 2015, Ms. White was discharged from WMHI with a diagnosis of: bipolar mania with psychotic features; narcissistic personality disorder; and hypertension/high blood pressure. On said date, Ms. White was issued medical orders from WMHI which instructed

the Defendants to continue her course of medication which included daily doses of Lithium 300mg each morning; Lithium 600mg each evening; and daily doses of Amitripthline, Cognetin Clonidine, Prolixim, and Hydrochlorothiazide (HCTZ 25mg).   Ms. White's discharge orders also instructed Defendants to provide Ms. White with follow up mental health treatment. Upon her discharged, WMHI provided Defendants with copies of Ms. White's treatment records, discharge orders and medication prescriptions.

18.     On January 29, 2015, Defendants transported Ms. White back to the Henderson County Criminal Justice Center, and upon her return, Ms. White appeared mentally clear and she did not have any apparent medical issues or mental health issues. Defendants then obtained copies of Ms. White's discharge orders which included information regarding her required medication regime.   Despite having knowledge of Ms. White's discharge orders and her need for prescribed medication, Defendants withheld needed medical treatment to Ms. White by failing to provide her with her prescribed medication for several days after her return from WMHI. Defendants did not provide Ms. White with her Lithium medication until approximately February 2, 2015, five days after her release from WMHI.

19.     From January 29, 2015 until February 7, 2015, Defendants maintained exclusive custody, control and dominion over Ms. White, and controlled her access to medical care and her access to prescription medication. Ms. White would remain at the HCCJC until her death on February 7, 2015.

20.     Pursuant to the policies and procedures of Henderson County and/or the Henderson County Sheriff's Department, correctional officers were charged with the duty of administering prescribed medication to inmates of the HCCJC.   Defendants failed to properly train the County's correctional officers regarding the proper procedures for administering prescription medication to inmates/detainees, and Defendants failed to provide the correctional officers with appropriate medical training to care for and protect the safety of the

6

inmates/detainees.

21.     By process of custom or practice, Defendants failed to provide the correctional officers with appropriate medical training regarding defined procedures to be followed by correctional officers when monitoring inmates who medically require prescription medication. By process of custom or practice, Defendants unlawfully failed to enforce policies regarding the administration of medication to inmates/detainees.

22.     By process of custom or practice, Defendants unlawfully allowed and/or authorized inmates of the HCCJC to administer medication to other inmates in direct violation of State and Federal law, and the written policies of the County.

23.     During the period of January 29, 2015 through February 6, 2015, Defendants failed to provide Ms. White with her prescribed medication, and/or Defendants failed to compel Ms. White to ingest such mediation. During such period of time, Defendants allowed inmates of the HCCJC to directly administer medication to Ms. White.   During such period of time, despite having knowledge that Ms. White was not regularly receiving her required medication for treatment of her mental health issues and hypertension, Defendants failed to provide Ms. White with needed medical treatment.

24.     During the period of January 29, 2015 through February 7, 2015, Defendants failed and/or refused to offer Ms. White with any medical treatment whatsoever from a physician. During the period of January 29, 2015 through February 7, 2015, Defendants also failed and/or refused to summon paramedics/EMS to provide emergency medical treatment to Ms. White. During the period of January 29, 2015 through February 7, 2015, Defendants failed and/or refused to transport Ms. White to a hospital or medical facility for medical evaluation and/or treatment.

25.     On or before February 2, 2015, Defendants had access to documentation which identified the potential symptoms and/or physical manifestations indicative of harmful drug

interactions or overdose for persons taking medications such as: Lithium, Amitripthline, Cognetin, Clonidine and/or Prolixim.

26.     On or before February 2, 2015, Defendants knew or should have known of the potential symptoms and/or physical manifestations indicative of harmful drug interactions or overdose in persons taking medications such as: Lithium, Amitripthline, Cognetin, Clonidine and/or Prolixim.

27.     On or before February 2, 2015, Defendants had access to documentation which identified the manifestation of symptoms such as: confusion; diarrhea; hand tremors; headaches; muscle weakness; muscle twitching, nausea; increased urination; vomiting; vertigo seen in persons taking Lithium as being known indicators that the person is potentially suffering from a severe drug interaction or Lithium toxicity/overdose.

28.     On or before February 2, 2015, Defendants knew or should have known that if Ms. White were to develop symptoms such as: confusion; diarrhea; hand tremors; headaches; muscle weakness; muscle twitching, nausea; increased urination; vomiting; or vertigo while taking Lithium medication, immediate medical treatment would be required.

29.     On or before February 2, 2015, Defendants had access to documentation which warned that persons taking Lithium medication should receive regular serum level testing and monitoring of their thyroid and kidneys.

30.     On or before February 2, 2015, Defendants knew of should have known that persons taking Lithium medication should receive regular serum level testing and monitoring of their thyroid and kidneys. During such time, Defendants failed to provide Ms. White with the opportunity to undergo regular serum level testing. Defendants also failed to monitor Ms. White for complications involving her thyroid or kidneys.

31.     On or about February 1, 2015, Ms. White's medical condition began to deteriorate. During such time Ms. White exhibited signs of uncontrolled shaking and jerking;

uncontrolled tremors in her hands; drawing up in her hands; inability to sleep; she was observed to be hot to touch; she had profuse sweating; she was hallucinating; and she was observed to be physically unable to feed herself.

32.      During all times pertinent, Ms. White was monitored by video surveillance controlled and accessed by Defendants and its correctional officers. During all times, the deterioration of Ms. White's medical condition was observed and known to Defendants and jail personnel.

33.      During the period of January 31, 2015 through February 6, 2015, multiple inmates at the HCCJC reported complaints to Defendants and other correctional officers regarding the apparent drastic decline in Ms. White's health, and her need for medical care.

34.      During the period of January 31, 2015 through February 6, 2015, multiple inmates at the HCCJC reported to Defendants and the correctional officers that Ms. White was suffering from confusion; diarrhea; hand tremors; profuse sweating; muscle weakness; drawing in of her hands; inability to use her arms and hands; muscle twitching and shaking; stomach pain; nausea; increased urination; loss of bowel control; loss of bladder control; dizziness and vertigo; inability to eat unassisted; inability to stand; inability to clean herself; and that she was experiencing hallucinations.

35.      During the period of January 31, 2015 through February 6, 2015, multiple inmates at the HCCJC expressed concern to Defendants and the correctional officers that Ms. White required immediate medical treatment and that she needed to be taken to the hospital. Despite such knowledge, Defendants failed to and/or refused to provide Ms. White with needed medical care.

36.      Video surveillance controlled and monitored by Defendants and the correctional officers reveals that as of February 1, 2015, Ms. White was observed to be uncontrollably shaking, unable to pick up items in her cell; not sleeping; and she was observed by Defendants

to be staying in the same position without movement for long periods of time.   By February 2, 2015, Ms. White had stopped eating and she exhibited signs of confusion and disorientation.

37.     Defendants and their correctional officers are responsible for preparing and providing food to the inmates of the HCCJC, and during all times Defendants were fully aware of Ms. White's failure and/or inability to eat, and her continued failure and/or inability to eat during the days leading up to her death. Despite such knowledge, Defendants failed and/or refused to provide Ms. White with needed medical care or nourishment.

38.     On or about February 2, 2015, Ms. White was observed by Defendants and other inmates to be physically unable to pull up her pants; she was observed to be disoriented and walking about wearing only a shirt.

39.     On or about February 3, 2015, Defendants and other correctional officers became aware that Ms. White had lost control of her bowels and bladder, causing her to defecate and urinate within her clothing. In response, the County's correctional officers refused to assist Ms. White and instead required other inmates to clean Ms. White's person and cell.

40.     During such time, multiple inmates expressed concern to Defendants regarding the drastic deterioration of Ms. White's medical condition and her need for emergency care. Again, Defendants ignored such concern and refused to provide Ms. White access to any medical treatment.

41.     On or about February 3, 2015, Defendants relocated Ms. White to a medical isolation cell. Defendants admit that video surveillance footage from the HCCJC reveals that as of February 3, 2015, it was visually apparent that Ms. White had lost control of the use of her arms and it was apparent to there was a "noticeable change in Ms. White's physical and medical condition."   Despite such knowledge, Defendants confined Ms. White in the medical isolation cell until February 6, 2015 and refused to provide Ms. White access to any medical treatment.

42.     On or about February 4, 2015, Defendants became aware that Ms. White had

10

again lost control of her bowels and had defecated upon herself inside her clothing. In response, Defendants' correctional officers refused to render any aide to Ms. White or otherwise help her clean her body or clothing; and Defendants' correctional officers instead required other inmates assist Ms. White in all activities, including eating, bathing, drinking, sitting-up, lying down and for administration of medication.

43.     Pursuant to the policies, customs, practices or procedures of Henderson County and/or the Henderson County Sheriff's Department, Defendants allowed other inmates of the HCCJC to administer medication to Ms. White.

44.     On or about February 4, 2015, Ms. White was found nonresponsive on the floor of her cell, and once again she had lost control of her bowels and bladder. Afterwards, Defendants and their correctional officers refused to allow other inmates/detainees access to Ms. White, and she was instead forced by Defendants to remain in isolation all day sitting in her own feces and urine. Defendants and their correctional officers rejected the pleas of other inmates to help Ms. White.

45.     Defendants were aware that Ms. White was physically unable to bathe, eat, drink or care for herself, and despite such knowledge, Defendants inhumanly and unlawfully prevented Ms. White from receiving needed medical treatment. Instead, Defendants forced Ms. White to suffer and fester in her own feces, turning away other inmates who tried to render aide. Defendants forced Ms. White to suffer such indignities and inhuman treatment.

46.     For the remainder of Ms. White's life, Defendants' purposefully failed to shower or otherwise clean Ms. White, and she ultimately died on February 7, 2015 while still covered in her own feces and urine. During such period of time, Defendants' correctional officers repeatedly mocked and commented about the smell of feces and body odor coming from Ms. White's cell, and during such time untouched trays of food were repeatedly removed from Ms. White's cell evidencing that she had failed to eat during the final 3-4 days of her life. Still Defendants refused

11

to provide Ms. White with lifesaving medical care.

47.     On or about February 4, 2015, CO Crystal Stone submitted a formal request that Ms. White undergo medical evaluation, then noting within her Request that Ms. White was physically unable to feed herself.   On February 5, 2015, Ms. White was finally evaluated by nurse Derinda Lucken, RN, and her examination revealed that Ms. White was uncontrollably shaking, she suffered from diarrhea, and she was experiencing difficulty walking.   On said date, Ms. White's blood was drawn and submitted for analysis, and afterwards Ms. White was returned to the medical isolation cell.

48.     During the afternoon of February 5, 2015, Ms. White was found on the floor rocking back and forth on her knees and hands, struggling to reach her bed, during which CO Courtney Beckley and another inmate physically lifted Ms. White into her bed.   On February 5, 2015, Ms. White expressed complaints of nausea; complaints of stomach pain; and complaints of severe chaffing as a result of being forced by Defendants to sit in her own feces for several hours.

49.     On said date other inmates/detainees contacted the guard tower via intercom and alerted the correctional officer about Ms. White's apparent condition and her reports of pain. Still Defendants did nothing to provide Ms. White with lifesaving medical care.

50.     On or about February 6, 2015, Ms. White once again lost control of her bowels and bladder. On that date, family members of Ms. White were alerted by other inmates of the jail about Ms. White's serious medical condition and the Defendants failure to provide Ms. White with needed medical care.

51.     On or about February 6, 2015, members of Ms. White's family contacted Defendants and reported that they had been notified by other inmates/detainees that Ms. White was in poor health and her family members begged Defendants to provide Ms. White with access to medical care.

52.     At approximately 3:30 p.m. on February 6, 2015, in response to the pleas of Ms. White's family members, Lt Jackie Bausman and CO Beverly Dunaway went to the guard tower of B-Pod, during which they attempted to make contact with Ms. White through the intercom located in her cell.   Ms. White was then lying on her bunk. Via intercom, a corrections officer instructed Ms. White to set her food trays on the trap of her cell in order to compel Ms. White to move so her movements could then be observed by Lt Jackie Bausman.   Ms. White attempted to comply as instructed, but while attempting to pick up the food tray from the floor, Ms. White fell backwards upon the floor and afterwards was unable to stand. A correctional officer was then alerted and entered into Ms. White's cell to lift her from the floor.   In response to such observations, Defendants again refused to provide Ms. White with medical treatment.

53.     On February 6, 2015, Lieutenant Jackie Bausman, Captain Jeff Smith and the dayshift correctional officers participated in a meeting during which it was decided by Defendants that Ms. White would not receive lifesaving medical treatment, but she would instead be removed from her medical isolation cell and moved into a booking cell for further observation.

54.     At or about 4:10 p.m., February 6, 2015, CO Kristy Cotton and CO Courtney Beckley escorted Ms. White to a booking cell, during which Ms. White was physically unstable and was profusely sweating. At approximately 8:00 p.m. February 6, 2015, Sgt. Eric Hatchett entered Ms. White's cell to administer her medication, during which all meds were reportedly refused by Ms. White. At such time, Ms. White was in extremely poor health, and she was no longer capable of taking her medication. At approximately 10:50 p.m. February 6, 2015, Sgt. Hatchett returned to Ms. White's cell during which he again asked her if she wanted to take her meds.   In response, Ms. White reportedly mumbled without formulating a coherent response. Sgt. Hatchett then walked away from Ms. White, and took no further action.

55.     During the hours that followed, Defendants and the correctional officers periodically looked into Ms. White's booking cell at a frequency of once per hour to assess

13

whether she appeared to still be breathing. At no time did any correctional officer or any other person enter into Ms. White's cell to assess her condition; to fed her, or otherwise offer her medical treatment. As Ms. White's condition worsened, a supervisor instructed the correctional officers to begin looking into Ms. White's cell on thirty (30) minute intervals, for purposes of monitoring her for signs of movement or breathing. Despite recognizing that Ms. White was gravely ill, Defendants and their correctional officers did nothing to help Ms. White. Throughout that evening and the early morning hours of February 7, 2015, Ms. White lay motionless upon the floor with her knees on the floor, back facing the door of her cell, and her head resting against the wall of her cell.

56.     During the hours that passed, Defendants and the correctional officers did nothing to assess Ms. White's medical condition other than to periodically look by the outside of her cell to look through the glass partition for movement seemingly consistent with breathing. On or about 3:30 a.m. February 7, 2015, CO David Dressander reportedly looked into Ms. White's cell during which he then observed that her back appeared to be no longer moving, thus indicating to him that Ms. White had stopped breathing. Despite such emergency circumstances, CO Dressander refused to enter Ms. White's cell to render aide or assess her condition. CO Dressander also failed or refused to call 911 or otherwise summon emergency medical care for Ms. White.   Instead, CO Dressander contacted CO Amanda Blankenship on the radio and asked her to return to booking to check on Ms. White's condition.

57.     CO Blankenship reportedly arrived at Ms. White's cell approximately two (2) minutes later, at which time the door to Ms. White's cell was opened for the first time since 8:00 p.m. February 6, 2014. CO Blankenship then entered Ms. White's cell and found her to be nonresponsive. Shockingly, CO Blankenship also failed to call 911 or otherwise summon emergency medical care for Ms. White.

58.     Instead, Sgt. Eric Hatchett was then summoned by radio to return to Ms. White's

14

cell.   Minutes later, Sgt. Hackett arrived at booking and he entered into Ms. White's cell. It was then that Sgt. Hackett finally instructed one of the correctional officers to call 911. Sadly, by that point Ms. White lay dead in her cell.   On February 7, 2015, at 6:40 a.m. (3 hours after Ms. White's death), the results of her February 5, 2015 blood test were received by Defendants, and same revealed that as of February 7, 2015, there was a presence of 1.80 millimoles per liter of Lithium medication within her blood system, nearly three (3) times the concentration of Lithium found in Ms. White's blood system on January 27, 2015 prior to her discharge from WHMI.

59.   From January 29, 2015 until her death of February 7, 2015, Defendants failed to provide Ms. White with any medical care whatsoever. Medical evidence to be presented in this matter will demonstrate that Ms. White's medical conditions, her pain and suffering, and her ultimate death would have been avoided if only Defendants had allowed Ms. White to receive medical care, medical care she, her family and fellow inmates/detainees pled the Defendants to provide.

60.   Ms. White's suffering and death were medically avoidable. Defendants left Ms. White to suffer, to fester in her own filth and feces; to lose the use of her body and mind; and ultimately die alone in a cold concrete cell.   Ms. White's death could have been avoided if only Defendants and/or any correctional officer had simply called 911 to summon emergency medical care.

## CAUSES OF ACTION

## COUNT I – DENIAL OF MEDICAL CARE

61.   Defendants, Henderson County, Tennessee; Henderson County Sheriff's Department; Sheriff Brian Duke; Anthony Woodfin; Jackie Bausman, and Eric Hatchett, are responsible for providing adequate medical care to inmates/detainees housed in the Henderson County Criminal Justice Center.

62.   Defendant Henderson County was at all times, responsible for implementation of

15

all regulations, practices and procedures of the Henderson County Sheriff's Department, among other things, all regulations and procedures relating to providing humane treatment and care to inmates/detainees of the Henderson County Criminal Justice Center; implementing physician ordered medical course of treatment for inmates/detainees of the Henderson County Criminal Justice Center; for administration or disbursal of pharmaceutical medications to inmates/detainees of the Henderson County Criminal Justice Center; for the monitoring of the medical conditions of inmates/detainees of the Henderson County Criminal Justice Center; the investigation of reports from persons detained within the Henderson County Criminal Justice Center regarding the medical needs of other detainees; the investigation of reports from family members of detainees of the Henderson County Criminal Justice Center regarding their reports and inquiries about the medical needs of related detainees; the investigation of reports from persons detained within the Henderson County Criminal Justice Center regarding the medical needs of other detainees; and for determination of the procedure when inmates/detainees should be afforded with emergency medical treatment.

63.     Defendants, while acting under color of state law, in their execution of the policies and customs of Henderson County, inflicted serious injury upon Gina White, ultimately causing her death. Henderson County and the other Defendants were deliberately indifferent to Ms. White's need for her prescribed medications and evident need for appropriate medical care. Defendants' acts and omissions set forth herein, resulted in the denial of minimal civilized measures of life's necessities.

64.     Defendant, Henderson County, Tennessee, was aware of prior alleged unconstitutional violations on the part of its employees in reference to unlawfully denying medical care to other inmates/detainees of the Henderson County Criminal Justice Center. Such knowledge or prior constitutional violations included but is not limited to: [1] an incident when a detainee was seriously injured as a result of the County's failure to implement the medical

treatment directives with regard to treatment of a severe blood clot in the detainee's leg; [2] a situation involving a detainee who suffered serious injury when Defendants interfered with a prescribed course of treatment and refusal to provide medication to a detainee then suffering with an infection while diagnosed with arthrogryposis; and [3] a situation involving a detainee during which Henderson County failed to provide necessary prescribed medication which ultimately caused the detainee to slip into a permanent psychotic state. All such incidents occurred within the 3-4 years preceding the events which give rise to this lawsuit. The foregoing incidents evidence that Defendants knew, yet ignored that its training of correctional officers regarding the provision and monitoring of medical care and medication use was deficient.

65.    Henderson County failed to adequately respond to such unlawful actions by instituting appropriate policies and/or procedures to prevent further unlawful conduct and/or violation of the constitutional rights of persons incarcerated/detained at the Henderson County Criminal Justice Center. As a result of such indifference and reckless conduct on the part of Defendants, Ms. White suffered injury, and ultimately died as a result of Defendants' refused to provide her access to appropriate medical treatment.

65.    These Defendants, while acting under color of state law, failed to meet the serious, emergency medical needs of Gina White, and failed to provide her access to the appropriate medical care warranted by Gina White's medical condition.   Such failures constitute deliberate indifference and deprived Gina White of her rights secured under the Eighth and Fourteenth Amendments to the United States Constitution.

66.    Defendants knew that Ms. White had a serious medical condition that required medication, and that if Ms. White did not properly receive her medication a substantial risk of serious harm was posed to Ms. White.   While acting under color of state law Defendants purposefully or through deliberate indifference, failed to provide Ms. White with the constitutionally mandated level of care necessary to avoid the foreseeable consequences of

17

failing to give Ms. White her essential medical treatment.

67.     Despite recognizing the fact that Ms. White required her medication, Defendants failed to act to provide her with essential medical treatment, nor did Defendants make any attempt to discover the nature of her medical problems, nor otherwise assist Ms. White after becoming aware that her medical condition was worsening.   Instead, Defendants ignored Ms. White's apparent symptoms and behavior, and they acted with deliberate indifference toward Ms. White's serious medical condition with the full understanding that their failure to provide such required medical care would result in serious harm or even death to Ms. White.

68.     During the period of Ms. White's incarceration/detainment at the Henderson County Criminal Justice Center, it was the policy, practice, custom and/or procedure of Defendants and/or the County's employees: (a) to refuse and/or deny providing necessary medical treatment to inmates and detainees; (b) to refuse and/or deny providing inmates/detainees with regular administration of prescription medication prescribed for the inmates and detainees by authorized medical personnel; (c) to ignore, delay and/or refuse providing necessary medical treatment to inmates and detainees; (d) to require untrained corrections officers to dispense prescription medication directly to inmates and detainees; (e) to not provide medical training to employees charged with the duty of administering prescription medication to inmates/detainees at the Henderson County Criminal Justice Center; (f) to not provide training to employees charged with monitoring and observing inmates with medical conditions at the Henderson County Criminal Justice Center; and, (g) to not provide training to employees charged with the duty to administer prescription medication to inmates, to enable them with the knowledge to recognize the symptoms and characteristics of patients who may be suffering from harmful drug interactions or drug overdose. These policies, practices, customs and/or procedures constitute deliberate indifference to the known serious medical needs of Ms. White and others within the Henderson County Criminal Justice Center. Defendants' execution of

such policies, practices, customs and/or practices caused severe injury, illness and suffering to Ms. White, and ultimately resulted in causing her death.

69.     During the period of Ms. White's incarceration/detainment at the Henderson County Criminal Justice Center, it was the custom of Defendants to approve, ratify, tolerate and/or acquiesce the County's employees: (a) to refuse and/or deny necessary medical treatment to Ms. White; (b) to refuse and/or preclude Ms. White from receiving regular administration of prescription medication prescribed for her by authorized medical personnel; (c) to delay and/or refuse to provide Ms. White with necessary medical treatment; (d) to allow dispensing of prescription medication directly to Ms. White without medical knowledge of the type of medication being administered or its affect upon Ms. White's body; (e) to allow inmates/detainees to serve prescription medication to other detainees such as Ms. White.  The Defendants' approval, ratification, and acquiescence of the forgoing conduct constitutes deliberate indifference to the serious medical needs of Ms. White, which in effect caused severe injury, illness and suffering to Ms. White and ultimately resulted in her death.

70.     It was the policy, practice, custom and/or procedure of Henderson County to allow inmates/detainees housed within the Henderson County Criminal Justice Center to administrate and/or disburse pharmaceutical medications directly to other inmates of the jail without supervision by corrections officers. During the course of Ms. White's incarceration, Defendants allowed other inmates to bath, fed, care for, and administrate medication to Ms. White, all without supervision on the part of Defendants or their employees.   These policies, practices, customs and/or procedures constitute deliberate indifference to the known serious medical needs of Ms. White and others within the Henderson County Criminal Justice Center. Defendants' execution of such policies, practices, customs and/or practices caused severe injury, illness and suffering to Ms. White, and ultimately resulted in her death.

71.     The policies, practices, customs and procedures of Henderson County and the

Henderson County Sheriff's Department, fail to provide any direction or guidance to the individual Defendants and/or Defendants' employees regarding the procedures for determining when inmates/detainees should be afforded immediate emergency medical treatment. The policies, practices, customs and procedures of Henderson County and the Henderson County Sheriff's Department, also fail to provide any direction or guidance to the individual Defendants and/or Defendants' employees regarding the circumstances, bases or medical parameters when 911 should called to request emergency medical treatment for inmates/detainees of the Henderson County Criminal Justice Center.   As a result of Defendants' failure to implement and/or enforce such policies, practices, customs and procedures, such omissions constitute deliberate indifference to the serious medical needs of Ms. White and others incarcerated/detained within the Henderson County Criminal Justice Center. Defendants' failure and/or refusal to implement such policies, practices, customs and/or practices regarding the procedure for rendering emergency medical care to such inmates and/or detainees, including Ms. White, caused severe injury, illness and suffering to Ms. White, and ultimately resulted in her death.

72.     Henderson County and each and every individual Defendant through one's own actions: sanctioned, ordered, knew about and/or acquiesced in the foregoing official policies and/or customs attributable to it/him, which in effect caused the violation of Gina White's constitutional rights and resulted in serious injury and harm to Ms. White.

73.     The fact Henderson County had prior knowledge of complaints and lawsuits brought against the County and the Henderson County Sheriff's Department based upon Defendants' alleged failure to provide medical care to detainees, and despite such knowledge allowed the foregoing acts and omissions to occur during the incarceration of Ms. White, is further proof of the Defendants' ratification and approval of the afore-referenced unlawful conduct and its employees deliberate indifference of the medical needs and Constitutional rights of its inmates/detainees.   Such ratification and approval by Henderson County and its supervisory

20

agents constitute deliberate indifference to the public, including the deceased, Gina White. The fact Henderson County failed to implement policies and procedures to eliminate the reoccurrence of such constitutional violations, is also further proof of the Defendants' ratification and approval of the afore-referenced unlawful conduct and its employees deliberate indifference for the medical needs and Constitutional rights of its inmates/detainees.

74.     Defendant, Brian Duke is responsible for the hiring, training and control of all deputies and/or corrections officers of the Henderson County Criminal Justice Center. Defendant Duke establishes Henderson County policy with respect to the providing of required medicine and/or medical treatment for those persons detained in the Henderson County Criminal Justice Center.   Defendant Duke implemented a policy or custom of allowing deputies and/or jail staff to deprive detainees or required medication, and also denying of medical treatment to those detained in the Henderson County Criminal Justice Center.

75.     Defendants Henderson County; Henderson County Sheriff's Department; Sheriff Duke; Captain/Jail Administrator Woodfin, Lt. Bausman, and Sgt. Eric Hachett failed to properly train Henderson County deputies, jailers and jail staff regarding the providing of medical care to persons incarcerated at the Henderson County Criminal Justice Center, and such failure to train was so grossly inadequate that it rose to the level of deliberate indifference as to the constitutional rights of Gina White.

76.     During the course of Ms. White's detainment at Henderson County Criminal Justice Center, Defendants and their employees acted with deliberate indifference toward Ms. White's medical needs and failed to properly monitor Ms. White after having denied her required mediation and after denying her with required medical treatment. During all times, Defendants and Defendants' employees knew that taking no action and/or insufficient action would result in the rapid and permanent deterioration of Ms. White's health, and ultimately cause her death.

77.     Defendants' failure and refusal to render medical care to Ms. White was a breach

of their duty to provide adequate medical care to Ms. White, and demonstrated a deliberate indifference to Gina White's civil rights and was, therefore, a violation of Gina White's rights under the United States Constitution and is actionable under 42 U.S.C. §1983.   The Defendants also violated Ms. White's rights secured by the Constitution of the State of Tennessee, under Article I, Sections Eight, Sixteen and Thirty-Two by failing to treat Ms. White in a humane manner.

## COUNT II – <u>WRONGFUL DEATH</u>

78.     Plaintiffs incorporate by reference the allegations of fact set forth in Paragraphs 1 – 60 of this Complaint, as if fully set forth herein.

79.     Plaintiff, Clifford Robert White, is the father of the deceased Gina White.   Plaintiff, Clifford Robert White has been judicially appointed by the Chancery Court for Henderson County, Tennessee to serve as the Administrator for the Estate of Gina White, and by operation of law, Clifford Robert White is the sole beneficiary of the Estate of Gina White. At death, Gina White was not survived by a spouse or child, and by operation of law, Clifford White is deceased next of kin and stands as the Administrator of the Estate of Gina White. Plaintiff, Clifford Robert White is the sole beneficiary of the Estate of Gina White. Pursuant to Tennessee Code Annotated, §20-5-107, Plaintiff Clifford Robert White is the proper party to bring this wrong death action.

80.     From January 29, 2015 until her death of February 7, 2015, Defendants exercised absolute control and dominion over Ms. White's access to medication and her access to medical treatment.   Throughout the course of Ms. White's incarceration, Defendants were fully aware of the deterioration of Ms. White's medical condition; during which Defendants failed and/or refused to provide Ms. White with needed medication or medical treatment. During the period of January 29, 2015 through February 7, 2015, Defendants failed and/or refused to summon paramedics/EMS to provide medical treatment to Ms. White. During the period of January 29, 2015 through February 7, 2015, Defendants failed and/or refused to otherwise transport Ms.

22

White to a hospital or medical facility.

81.     During such period of time, Defendants ignored and/or rejected Ms. White's pleas for medical treatment, and Defendants further ignored or rejected the pleas of Ms. White's family members and the pleas of fellow inmates that Ms. White be provided with needed medical treatment. Defendants failed to seek medical evaluation of Ms. White's apparent deteriorating condition. During all times pertinent, Defendants had access to documentation which warned of potential symptoms and/or physical manifestations indicative of harmful drug interactions or overdose for persons taking medications such as: Lithium, Amitripthline, Cognetin, Clonidine and/or Prolixim.

82.     From January 29, 2015 until her death of February 7, 2015, Defendants were aware that Ms. White suffered from a sudden onset of confusion; diarrhea; muscle weakness; muscle twitching, nausea; increased urination; vertigo; uncontrolled shaking and jerking; uncontrolled tremors in her hands; drawing up in her hands; inability to sleep; she was observed to be hot to touch; she had profuse sweating; she was hallucinating; and she was observed to be physically unable to feed herself. Despite having knowledge of such conditions, Defendants refused to provide Ms. White with medical treatment.

83.     During the days that immediately preceded her death, Defendants were fully aware that Ms. White was physically unable to bathe, eat, drink or care for herself, and despite such knowledge, Defendants inhumanly treated Ms. White and unlawfully prevented her access to needed medical treatment. Defendants forced Ms. White to suffer and fester in her own feces, turning away other inmates who tried to render her aide. Defendants instead forced Ms. White to suffer such indignities and inhuman treatment.   For the remainder of Ms. White's life, Defendants' purposefully failed to shower or otherwise clean her, and she ultimately died on February 7, 2015 while still covered in her own feces and urine. During such time, Defendants' correctional officers repeatedly mocked Ms. White and complained about the smell of feces and

body odor coming from Ms. White's cell, and during such time untouched trays of food were repeatedly removed from Ms. White's cell indicating she had failed to eat during the last 3-4 days of her life. Still Defendants refused to provide Ms. White with lifesaving medical care.

84.     On or about February 6, 2015, members of Ms. White's family contacted Defendants and reported that they had been notified by other inmates that Ms. White was in poor health and they begged that Ms. White be provided with access to medical care. Such pleas were ignored and rejected by Defendants. That evening, Ms. White was moved from her medical isolation cell to the booking cell, after which Defendants and their correctional officers periodically looked into Ms. White's cell to assess whether she appeared to still be breathing. At no time did any corrections officer or any other person enter into Ms. White's cell to assess her condition; to feed her, or otherwise offer her medical treatment. As Ms. White's condition seemingly worsened, the correctional officers were instructed by Defendants to look into Ms. White's cell on thirty (30) minute intervals to assess her for signs of breathing.   Such conduct on the part of Defendant defies logic and is inherently reckless.

85.     Throughout the evening of February 6, 2015 and the early morning hours of February 7, 2015, Ms. White lay motionless upon the floor with her knees on the floor, back facing the door of her cell, and her head resting against the wall. During the hours that passed, Defendants did nothing to assess Ms. White's medical condition other than to periodically look into her cell to look for movement consistent with breathing. On or about 3:30 a.m. February 7, 2015, CO David Dressander reportedly looked into Ms. White's cell during which he observed that her back was no longer moving, thus indicating to him that she had stopped breathing.

86.     Medical evidence to be presented in this matter will demonstrate that Ms. White's medical conditions, her pain and suffering, and her ultimate death would have been avoided if Defendants had simply allowed Ms. White to receive needed medical care, medical care she, her family and fellow inmates pled the Defendants to provide. Ms. White's death was medically

24

avoidable.    Ms. White's death could have been avoided if at any point during her incarceration, Defendants and/or any correctional officer had simply called 911 to summon emergency medical care. Instead, Defendants wrongfully left Ms. White to suffer, to fester in her own filth and feces; to lose the use of her body and mind; and ultimately die alone in a cold concrete cell.

87.    Not only were Defendants' acts and omissions as herein set forth <u>negligent</u> and <u>inhumane</u>; such acts and omissions were <u>grossly negligent</u>, <u>deliberate</u> and <u>intentional,</u> <u>reckless</u>, <u>wanton</u> and <u>criminally malicious</u>. As a direct result of the Defendants' wrongful conduct, fault and omissions, Gina White suffered and such wrongful conduct, fault and omissions ultimately and proximately caused her death.    Plaintiffs seek damages against all Defendants for mental and physical suffering, loss of time and necessary expenses resulting to the deceased, Gina White and her Estate, and for the personal injuries, indignities and death suffered by Ms. White. Plaintiffs seek damages for the wrongful death of Gina White, to include all other damages available under Tennessee Code Annotated, §20-5-113.

## COUNT III – <u>NEGLIGENT HIRING, TRAINING AND SUPERVISION</u>

88.    The Plaintiffs incorporate by reference the allegations of fact set forth in Paragraphs 1 – 60 of this Complaint, as if fully set forth herein.

89.    The acts and conduct, described above, constitute negligence, gross negligence, reckless conduct and/or intentional conduct under the law of the State of Tennessee.   This Court has pendant jurisdiction to hear and adjudicate these claims.

90.    Defendants Sheriff Brian Duke and Captain/Jail Administrator Anthony Woodfin, are jointly or severally responsible for the hiring, training and supervision of all Henderson County staff and correctional officers of the Henderson County Criminal Justice Center, and they, individually or jointly establish the policies of Henderson County with respect to the detention of persons at the Henderson County Criminal Justice Center.

91.     Defendants were negligent in the hiring of jail staff and employees of the Henderson County Criminal Justice Center.   Defendants were negligent in hiring persons who would not be able and/or cognizant to provide and/or make available the necessary medical treatment to persons incarcerated/detained at the Henderson County Criminal Justice Center. The Defendants' negligence in hiring unfit employees at the Henderson County Criminal Justice Center is a proximate cause of the injuries and medical conditions suffered by Gina White, and ultimately was a proximate cause of the death of Gina White.

92.     Defendants were negligent in the training of jail staff and employees regarding the providing of medical care to person incarcerated at the Henderson County Criminal Justice Center.   Due to this negligence, jail staff and employees of the Henderson County Criminal Justice Center did not have the requisite knowledge to provide adequate medical treatment to Gina White, and was a proximate cause of the injuries and medical conditions suffered by Gina White, and ultimately was a proximate cause of the death of Gina White.

93.     Defendants were negligent in the supervision of jail staff and employees regarding providing medical care to persons incarcerated/detained at the Henderson County Criminal Justice Center, and were specifically negligent for failing to supervise jail staff in providing Gina White access to medical care and medication.   The Defendants' negligence in failing to properly supervise jail staff and employees of the Henderson County Criminal Justice Center, was a proximate cause of the injuries and medical conditions suffered by Gina White, and ultimately was a proximate cause of the death of Gina White.

94.     Defendants' failure to properly hire, train and supervise its employees regarding their provision of the medical care and medication to detainees such as Gina White was not only  negligent and inhumane; such acts and omissions were grossly negligent, deliberate and intentional, reckless, wanton and criminally malicious on the part of Defendants. All such actions and omissions as alleged above are in violation of Tennessee Code Annotated, §29-20-201 et.

26

seq, generally known as the Tennessee Governmental Tort Liability Act.  At all times stated herein, Defendants negligently, intentionally and/or recklessly failed and/or neglected to adequately train, supervise, screen, test and/or discipline deputies in proper procedure regarding the administration of medication to detainees; regarding the monitoring detainees for medical complications; and regarding providing detainees with appropriate timely medical treatment. During all times stated herein, Defendants acted under color of State law.

95.     As a result of the Defendants' negligence, Ms. White suffered injury and ultimately death, and on behalf of the heirs and beneficiaries of Gina White, Plaintiffs seeks damages in an amount to be determined at trial, for:

(a) Physical suffering, mental suffering, medical complications and resulting pain and suffering;

(b) Loss of capacity for the enjoyment of life

(c) Death, pecuniary value of life and all other damages available under Tennessee Code Annotated, §20-5-113 and Tennessee's Wrong Death Act.

**COUNT IV:   GROSS NEGLIGENCE, INTENTIONAL CONDUCT, WILLFUL RECKLESS AND WANTON MISCONDUCT ON THE PART OF ALL DEFENDANTS**

96.     The Plaintiffs incorporate by reference the allegations of fact set forth in Paragraphs 1 – 60 of this Complaint, as if fully set forth herein.

97.     That in placing Ms. White in custody of the Defendants, Defendants owed a duty make reasonable effort to care for Ms. White and in a reasonable manner, exercise due care and caution to provide for Ms. White's medical needs. That notwithstanding the aforementioned duties, Defendants provision for the health and well-being of Gina White and for her apparent need for immediate medical treatment and need for medication, was extremely careless, grossly negligent, reckless, wanton, criminally malicious, and was conducted in an intentional manner, without concern for Ms. White's safety, health and life, and failed to render appropriate medical

care, treatment and emergency medical treatment for Gina White when obvious risk factors were present and evident regarding Ms. White's deteriorating medical condition, which were known or should have been known by Defendants.

98.     That as a further and direct proximate result of the conduct of the Defendants, individually and as agents of Henderson County and the Henderson County Sheriff's Department due to their acts and omissions, violated Ms. White's constitutional rights by directly and proximately causing injury, pain and suffering, and ultimately death of Gina White.

99.     The Defendants actions and omissions described in this Complaint, were so outrageous as to shock the conscience and are not tolerated by civilized society. Such actions and omissions on the Defendants were intentionally, maliciously, and recklessly oppressive, indignant, and displayed a complete indifference to the health, dignity, well-being and life of Gina White, such that said actions and omissions are punitive in nature and constitute a violation of the laws of the State of Tennessee and the United States Constitution.

100.    As a proximate result of the Defendants' extremely careless, grossly negligent, reckless, wanton, criminally malicious, and intentional conduct as described herein, Ms. White suffered injury and ultimately death, and on behalf of the heirs and beneficiaries of Gina White, Plaintiffs seeks damages in an amount to be determined at trial, for:

(a) Physical suffering, mental suffering, medical complications and resulting pain and suffering;

(b) Loss of capacity for the enjoyment of life

(c) Death, pecuniary value of life and all other damages available under Tennessee Code Annotated, §20-5-113 and Tennessee's Wrong Death Act.

**COUNT V:     GOVERNMENTAL TORT LIABILITY ACT (T.C.A.§29-20-201 et. seq.)**

101.    The Plaintiffs incorporate by reference the allegations of fact set forth in

28

Paragraphs 1 – 60 of this Complaint, as if fully set forth herein.

102.   Defendants' actions and omissions (as they relate to state law claims) in this case are not protected by the immunity provisions in the GTLA because, amount other things: (a) Plaintiff's claims arise from the Defendants' negligent acts and/or omissions of its employees acting within the scope of their employment (T.C.A.§29-20-205); (b) said employees failed to exercise or perform a function that was not discretionary, and deviated from an established plan and/or policy; and (c) said employees inflicted mental anguish and suffering upon the deceased, Gina White.   All of which proximately caused the damages, injuries and death of Gina White.

103.   The special duty exception to the public duty doctrine is applicable to this case because the Defendants' actions and/or omissions involved intent, malice and/or reckless misconduct.   Defendants' acts and/or omissions caused damage to Gina White in the form of physical injury, loss of quality of life; physical and mental suffering, and death, for all of which Defendants are liable in damages. During all times stated herein, Defendants acted under color of State law.

## CLAIMS FOR RELIEF

WHEREFORE, the Plaintiffs, Clifford Robert White, individually, and as Administrator and wrongful death beneficiary and heir at law of the Estate of Gina White (deceased), hereby respectfully request that the Court enter a Judgment in favor of Plaintiffs against Defendants as follows:

a.   For compensatory damages and special damages in an amount to be proven at trial including but not limited to damages for pain and suffering, mental anguish and anxiety, public humiliation, egregious inhumane treatment; embarrassment, all suffered by the Gina White, (the deceased);

b.   For an award of punitive damages against the individual Defendants;

c.   For costs, expenses, and reasonable attorney's fees for this action in accordance

29

with 42 U.S.C. §1983 and 42 U.S.C. §1988;

d.   For an Order declaring that the Defendants have acted in violation of the United States Constitution and the Tennessee Constitution;

e.   For an Order enjoining the Defendants from engaging in any further unlawful conduct, omissions or practices complained of herein;

f.   For pre-judgment interest and post-judgment interest;

g.   For the Court to exercise pendant jurisdiction as to Plaintiffs' state law claims and award all damages Plaintiffs are entitle to under the Tennessee Governmental Tort Liability Act and other state laws;

h.   For damages available under Tennessee's Wrong Death Act, and as provided for under Tennessee Code Annotated, §20-5-113;

i.   For all such other relief both general and specific to which Plaintiffs may be entitled.


Respectfully submitted,


By:   /s/ Stephanie Ritchie Mize
        Stephanie Ritchie Mize
        BPR No.: 024883
        Attorney for Plaintiffs
        136 Franklin Street, Suite 200
        Clarksville, Tennessee 37040
        (931) 648-9400

## <u>VERIFICATION</u>

The Plaintiff in the foregoing Complaint personally appeared before me, the undersigned authority, and on his oath state that the facts and matters set forth in the foregoing Complaint are true, to the best of his knowledge, information and belief.

_Clifford Robert White_
CLIFFORD ROBERT WHITE, individually, and as Administrator for the Estate of Gina White

STATE OF TENNESSEE          )

COUNTY OF MONTGOMERY      )

Sworn to and subscribe before me, this the 3rd day of February, 2016.

_Brandi Smith_
Notary Public

My Commission Expires : 6|12|19 .

## <u>COST BOND</u>

I, the undersigned, hereby acknowledge myself as principal and surety for the above cause not to exceed One Thousand and No/100 Dollars ($1,000.00).

By:   _/s/ Stephanie Ritchie Mize_
Stephanie Ritchie-Mize
Attorney for Plaintiffs

31